UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOE HAND PROMOTIONS, INC.,

                                    Plaintiff,

            -against-                                    **REPORT AND**
                                                         **RECOMMENDATION**
EDDIE JR.'S SPORTS LOUNGE, INC.,                         22 CV 7100 (EK) (CLP)
*d/b/a* EDDIE JR.'S SPORTS LOUNGE, and
HUGO GARCIA,

                                    Defendants.
-------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

On November 21, 2022, plaintiff Joe Hand Promotions, Inc. ("Joe Hand" or "plaintiff")

commenced this action against defendants Eddie Jr.'s Sports Lounge, Inc., doing business as

Eddie Jr.'s Sports Lounge ("Eddie Jr.'s"), and Hugo Garcia ("Garcia" or "defendant") alleging a

violation of the Communications Act of 1934, as amended, 47 U.S.C. § 553 and §§ 605 *et seq.*

(the "Communications Act").  (See Compl.[1]).  Currently before the Court, on referral from the

district court, is plaintiff's motion for default judgment against Garcia and for attorney's fees and

costs (the "Motion").  (ECF No. 9).[2]  Having reviewed plaintiff's submissions, and for the

reasons stated below, the Court respectfully recommends that the district court grant the Motion

and that plaintiff be awarded a total of $23,396.88 in damages and $2,202 in attorney's fees and

costs, for a total award of $25,598.88.

---

[1] Citations to "Compl." refer to plaintiff's Complaint filed on November 21, 2022 (ECF No. 1).
[2] On March 3, 2023, plaintiff's request for entry of default as to Eddie Jr.'s was denied based on lack of
timely and proper service.  On March 22, 2023, plaintiff filed a Notice of Voluntary Dismissal as to Eddie Jr.'s, and
Eddi Jr's was dismissed the following day, March 23, 2023.  (See ECF No. 8).

BACKGROUND

Plaintiff Joe Hand is a Pennsylvania corporation with its principal place of business located at 213 W. Street Road, Feasterville, Pa. (Compl. ¶ 1). Plaintiff specializes in the distribution and licensing of premier sporting events to commercial locations, such as bars, restaurants, lounges, clubhouses and similar locations. (Compl. ¶ 7; see also Hand Decl.[3] ¶ 3). Plaintiff alleges that, pursuant to a contract, plaintiff held the exclusive commercial distribution rights to the "*Deontay Wilder vs. Luis Ortiz II*" event and all undercard bouts and commentary scheduled on November 23, 2019 (the "Event"). (Compl. ¶ 1; Hand Decl. ¶ 3; ECF No. 9-3). Pursuant to the contract, plaintiff entered into subsequent agreements with various commercial establishments in New York State, which allowed those establishments to exhibit the Event to their patrons, in exchange for a fee paid to plaintiff. (Compl. ¶ 9; Hand Decl. ¶¶ 3, 9). The Event, which originated via satellite uplink, was re-transmitted interstate to these entities via satellite signal to their various cable and/or satellite systems. (Compl. ¶ 8; Hand Decl. ¶ 9).

Plaintiff alleges that Eddie Jr.'s is a New York corporation, located at 40 Marcy Avenue, Brooklyn, N.Y. 11211. (Compl. ¶ 2; Hand Decl. ¶ 10). Defendant Garcia is alleged to be an officer, director, shareholder, member and/or principal of the entity owning and operating Eddie Jr.'s. (Compl. ¶ 3(b)). He is also alleged to have had an obvious and direct financial interest in the activities of Eddie Jr.'s, with the right and ability to supervise its activities. (Id. ¶ 3(c), (d)).

According to the Complaint, defendant Garcia approved, directly participated in and/or assisted the willful interception or receipt of the Event, which was then unlawfully transmitted, divulged and published to patrons in Eddie Jr.'s. (Id. ¶ 3(a), 11).

---

[3] Citations to "Hand Decl." refer to the Declaration of Joseph P. Hand, III, filed April 24, 2023. (ECF No. 9-2).

Plaintiff alleges that although defendants could have purchased authorization from plaintiff to exhibit the Event for a fee, they chose not to enter into such a contract, and, therefore, at no time did plaintiff authorize the receipt and exhibition of the Event in Eddie Jr.'s.  (Id. ¶¶ 10, 12; see also Hand Decl. ¶¶ 11, 12, 13 (stating that defendants did not pay the fees to legally receive the Event; plaintiff did not take steps to unblock defendants' establishment's account to allow them to receive and broadcast the Event, and plaintiff did not authorize the defendants to exhibit the Event)).

Plaintiff asserts that defendants pirated plaintiff's licensed exhibition of the Event and infringed on plaintiff's exclusive rights to the distribution thereof with the purpose of securing commercial advantage and financial gain.  (Compl. ¶ 13).  Plaintiff further claims that the unauthorized exhibition of the Event was in violation of 47 U.S.C. §§ 553 and 605.  (Id. ¶¶ 16, 17; Pl.'s Mem.[4] at 1).  Plaintiff seeks statutory damages, attorney's fees, and costs.  (Compl. at p. 5).

## PROCEDURAL HISTORY

Plaintiff filed the Complaint on November 21, 2022, and effected service on Garcia on December 22, 2022.  (ECF No. 5).  Despite proper service, defendant Garcia failed to answer or respond to the Complaint.  On February 23, 2023, plaintiff moved for entry of default as to defendant Garcia.  (ECF No. 6).  On March 3, 2023, the Clerk of the Court entered default as to Garcia (ECF No. 7), and on April 24, 2023, pursuant to an Order of the District Court, plaintiff filed the instant Motion.  (ECF No. 9).  On April 25, 2023, the Honorable Eric Komitee referred the action to the undersigned to conduct an inquest and prepare a Report and Recommendation on the amount of damages to be awarded.

---

[4] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Motion for Default Judgment, filed April 24, 2023.  (ECF No. 9-1).

Plaintiff seeks statutory damages of $7,798.09, representing the residential licensing fee times 104—the number of patrons in Eddie Jr.'s during the Event—pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), and $15,597.92 in enhanced statutory damages based on defendant's willful violation, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).  (Pl.'s Mem. at 5–11.)  Plaintiff also seeks $1,880.00 in attorney's fees and a reimbursement of $557.00 for the costs incurred by plaintiff in pursuing this action.  (Id. at 13–14).

## DEFAULT JUDGMENT

I.  <u>Legal Standard</u>[5]

Rule 55 sets forth a two-part procedure for entering a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, if the defaulting party fails to vacate the entry of default pursuant to Rule 55(c), the appearing party may seek a default judgment to establish liability and, if proven, damages.  Fed R. Civ. P. 55(b).

The Second Circuit has cautioned that a default judgment is an "extreme sanction" that "must remain a weapon of last, rather than first, resort."  <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981); <u>see also</u> <u>Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc.</u>, No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), <u>adopting report and recommendation</u>, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018).  While the Second Circuit has recognized the pressure on district courts "to dispose of cases that . . . delay and clog [their] calendar[s]" due to the litigants' "disregard of the rules," the Circuit instructs district courts to "maintain a balance between clearing [their] calendar[s] and affording litigants

---

[5] Caselaw quotations in this Report and Recommendation accept all alterations and omit internal quotation marks, citations, and footnotes unless otherwise noted.

a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993); see also Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023), report and recommendation adopted, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023).  Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96; see also Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").  Furthermore, "[Rule 55(b)] states that a judgment by default 'may' be entered under specified circumstances, not that it must."  Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. at 162.  Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because the defendant is in default.  Id.

In deciding whether to grant a default judgment, courts have significant discretion and may consider a number of factors, including:

a. Whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings");

b. "[W]hether the grounds for default are clearly established," Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *2 (quoting Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. 1992)); and

c. "[T]he amount of money potentially involved.  The more money involved, the less justification for entering the default judgment."  Id.

When a defendant defaults, the defendant is typically deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages."  Jeremiah v. 5

Towns Jewish Times, Inc., 2023 WL 6593997, at *3 (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  However, "a district court has discretion . . . to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.  In either event, the Court must review the allegations in the Complaint and/or factual averments to determine if the elements of each claim have been adequately pleaded.  See id.; Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (adopting report and recommendation and explaining that "it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief").  Moreover, the Court may, in deciding whether to grant default judgment, consider whether there are unresolved questions regarding material issues of fact as to liability, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant.  See 10A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2685 (4th ed. 2023) (discussing the aforementioned factors).

   II.   Default

   Before turning to the question of whether plaintiff has adequately pleaded some or all of its claims against Garcia such that default judgment may properly be entered against him, the Court addresses whether Garcia in fact defaulted.

   Garcia was properly served process on December 22, 2022.  (ECF No. 5).  Despite the numerous opportunities afforded to Garcia, he has neither contested default nor appeared in this action.  Indeed, Garcia failed to respond to the Court's inquest order, which afforded him an additional opportunity to challenge the Clerk's entry of default and/or contest the appropriate measure of damages.  (See ECF Nos. 10–11).  It is therefore beyond dispute that Garcia is in default.  See Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3 (quoting Hirsch

6

v. Innovation Int'l, Inc., 1992 WL 316143, at *2, for the proposition that a defendant's default is "crystal clear" when they fail to oppose the plaintiff's motion for a default judgment).

III.    Adequacy of Pleadings

Before recommending that the district court enter default judgment as to some or all of plaintiff's claims, the Court is obligated to review the allegations in the Complaint and confirm that each of the elements of plaintiff's claims have been adequately pleaded.  See Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d at 153.  In doing so, the Court accepts plaintiff's factual allegations as true.  See id.; Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3.

Plaintiff alleges that Garcia violated 47 U.S.C. §§ 553(a)(1)[6] and 605(a)[7] through the unauthorized interception of plaintiff's cable and satellite transmission.  (Pl.'s Mem. at 4–5). However, a court is not permitted to grant damages under both statutes for a single illegal transmission.  See International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993). Rather, the Second Circuit has stated that where a defendant is liable under both Sections 553 and 605, the court should award damages pursuant to Section 605.  Id.; see also Garden City Boxing Club, Inc. v. Polanco, No. 05 CV 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006), aff'd, 228 Fed. Appx. 29, 30 (2d Cir. 2007).  Accordingly, plaintiff chose to proceed pursuant to 47 U.S.C. § 605 alone for purposes of the Motion.  (Pl.'s Mem. at 4).

In the present case, the allegations in the Complaint clearly establish the elements necessary to state a claim under Section 605, which has been held to apply to the interception of

---

[6] Section 553(a)(1) provides, in relevant part, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).

[7] Section 605(a) provides, in relevant part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person."  47 U.S.C. § 605(a).

cable communications originating as satellite or radio transmissions.  See International Cablevision, Inc. v. Sykes, 75 F.3d 123, 131–32 (2d Cir. 1996), cert. denied, 519 U.S. 929 (1996); see also Garden City Boxing Club, Inc. v. Polanco, 2006 WL 305458, at *5; Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01 CV 3945, 2002 WL 2022522, at *2 (E.D.N.Y. May 21, 2002).

In the immediate case, the alleged conduct—the unauthorized interception, receipt, and broadcast of the Event, which originated via satellite uplink—violates this statute.  Therefore, plaintiff's Complaint states a legitimate claim under Section 605.

Plaintiff seeks to hold Garcia individually liable for the violations of Section 605 that occurred at Eddie Jr.'s.  Individuals may be held liable for violations of Section 605 that occur at their establishments under two theories: vicarious liability and contributory liability.  See J & J Sports Prods., Inc. v. Guncay, No. 18 CV 2097, 2018 WL 6313210, at *2 (E.D.N.Y. Oct. 17, 2018), report and recommendation adopted, 2018 WL 6308773 (E.D.N.Y. Dec. 3, 2018).  A plaintiff can establish that individual defendants are vicariously liable by demonstrating that defendants "had a right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials."  Id. (quoting Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997)).  A plaintiff can establish that individual defendants are liable for their contributory infringement when they "authorized the infringing use."  Id. (quoting Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d at 971).

To find the individual defendant vicariously liable, plaintiff must show that the defendant benefitted from the unauthorized reception of the Program through a showing of "direct financial gain, such as a cover charge on the night of the event" or "strong indirect evidence of financial

8

gain, such as a bar hosting a large number of patrons, who would presumably purchase drinks during the broadcast." J & J Sports Prods., Inc. v. LX Food Grocery Inc., No. 15 CV 6505, 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016); see also J & J Sports Prod., Inc. v. McAdam, No. 14 CV 5461, 2015 WL 8483362, at *2–3 (E.D.N.Y. Dec. 9, 2015) (finding individual defendants vicariously liable where the infringing content was broadcast on five televisions, the establishment charged a $20 cover charge, and the establishment had approximately 100 patrons); J & J Sports Prods. v. Tellez, No. 11 CV 2823, 2011 WL 6371521, at *3–4 (E.D.N.Y. Dec. 20, 2011) (finding the individual defendant vicariously liable where 85 patrons were present watching the infringing content in a bar); Joe Hand Promotions, Inc. v. Beer Closet, Inc., No. 17 CV 3735, 2018 WL 4138938, at *2, *5 (E.D.N.Y. July 26, 2018) (finding individual defendants vicariously liable where they advertised their broadcast of the infringing content, one television broadcast the event, and 35 patrons were present at the time), report and recommendation adopted, 2018 WL 4119548 (E.D.N.Y. Aug. 24, 2018).[8]

The Complaint alleges that defendant Garcia is an officer, director, shareholder, member and/or principal of the entity owning and operating Eddie Jr.'s. (Compl. ¶ 3(b)). The Complaint also alleges that Garcia had an obvious and direct financial interest in the activities of Eddie Jr.'s, with the right and ability to supervise its activities. (Id. ¶ 3(c), (d)).[9] According to the Complaint, defendant Garcia approved, directly participated in and/or assisted the willful interception or receipt of the Event, which was then unlawfully transmitted, divulged and

---

[8] Some courts have found that similar allegations were insufficient to hold an individual defendant vicariously liable. See, e.g., J & J Sports Prods., Inc. v. Daley, No. 06 CV 238, 2007 WL 7135707, at *3–4 (E.D.N.Y. Feb. 15, 2007), report and recommendation adopted, (E.D.N.Y. Mar. 19, 2007). Here, however, given the weight of the authority and the factual allegations in the Complaint, the Court finds that plaintiff has sufficiently alleged liability on the part of Garcia.

[9] Further supporting the potential financial interest of Garcia is the Affidavit of Leoncite Celestin, an investigator for plaintiff who visited Eddie Jr.'s establishment on the night of the Event and observed that the location had an approximate capacity of 250 patrons, and that approximately 104 were watching the Event on three televisions. (Celestin Aff. (ECF No. 9-5))

published to patrons in Eddie Jr.'s.  (Id. ¶¶ 3(a); 11).  Based on these allegations, which are undisputed, the Court respectfully recommends that defendant Garcia be found vicariously liable for the violations of Section 605 as alleged in the Complaint.[10]

Accordingly, it is respectfully recommended that plaintiff's motion for entry of a default judgment be granted and that damages be awarded as set forth below.

DAMAGES

I.   Legal Standard

Once the court determines that default judgment should enter, the plaintiff must still establish his entitlement to the damages sought.  See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) (holding that "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation"); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded").  Unlike with the question of liability, a defaulting defendant is not deemed to have admitted all well-pleaded allegations concerning damages.  See, e.g., Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3.

In determining the appropriate measure of damages, the court is permitted to "conduct hearings" or make referrals as necessary.  Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  United States v. Richardson, No. 17 CV 2982, 2018

---

[10] Given the Court's finding that the Complaint includes sufficient allegations to establish that Garcia is vicariously liable, the Court does not pass on contributory liability.  See J & J Sports Prods., Inc. v. Guncay, 2018 WL 6313210, at *3 (explaining that "[b]ecause I find that [the individual defendant] is vicariously liable for the unlawful interception of the program, it is not necessary to address plaintiff's contributory infringement claim").

WL 4138934, at *3 (E.D.N.Y. Feb. 13, 2018) (quoting Fustok v. Conticommodity Servs., Inc.,

122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989)), report and

recommendation adopted, 2018 WL 4119518 (E.D.N.Y. Aug. 29, 2018).

II.   Analysis

Plaintiff requests an award of $7,798.96 in statutory damages and $15,597.92 in

enhanced statutory damages.  (Pl.'s Mem. at 7–8, 10–11).  The Court addresses each request in

turn.

A.   Statutory Damages

Where, as here, a violation of Section 605 has occurred, plaintiff is entitled to elect

statutory or actual damages.  47 U.S.C. § 605(e)(3)(C)(i).  In this instance, plaintiff has elected to

recover statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).  (Pl.'s Mem. at 4–5; see

Hand Decl. ¶ 19).[11]  Section 605 provides for penalties "for each violation of subsection (a) . . .

in a sum of not less than $1,000 or more than $10,000, as the court considers just."  47 U.S.C.

§ 605(e)(3)(C)(i)(II).  Section 605 requires the court to assess damages based on each "violation"

of the statute, but there is no statutory definition of "violation."  See Garden City Boxing Club,

Inc. v. Rosado, No. 05 CV 1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005), report and

recommendation adopted, (E.D.N.Y. Nov. 9, 2005).  However, most cases applying this statute

in a commercial context have interpreted the showing of a single event on a single night as one

violation.  See, e.g., id.; Time Warner Cable of N.Y.C. v. Taco Rapido Rest., 988 F. Supp. 107,

111 (E.D.N.Y. 1997), adopting report and recommendation, 988 F. Supp. at 109–12.

---

[11] As noted above, see p. 7 supra, a plaintiff may only recover damages under one statute when there is a single illegal transmission.  See International Cablevision, Inc. v. Sykes, 997 F.2d at 1008–09.  Therefore, in accordance with Second Circuit precedent and plaintiff's request that the Court award damages under Section 605 (Pl.'s Mem. at 4), the Court assess damages under Section 605.

Section 605 leaves the determination of the amount of damages that may be imposed for each violation, within the range of $1,000 to $10,000 per violation, to the sound discretion of the court.  See 47 U.S.C. § 605(e)(3)(C)(i)(II); Time Warner Cable of N.Y.C. v. Taco Rapido Rest., 988 F. Supp. at 111.  The factors to be considered in determining the appropriate amount of damages include the "pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant[,] as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose."  J & J Sports Prods., Inc. v. Mangos Steakhouse & Bakery, No. 13 CV 5068, 2014 WL 2879868, at *6 (E.D.N.Y. May 7, 2014) (quoting Cablevision Sys. Corp. v. De Palma, No. 87 CV 3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989)), report and recommendation adopted, 2014 WL 2879890 (E.D.N.Y. June 24, 2014).

In calculating lost profits, some courts have awarded a flat damage amount when considering the unauthorized receipt and broadcast of a cable program by a commercial establishment.  See, e.g., Joe Hand Promotions, Inc. v. Batista, No. 20 CV 6460, 2021 WL 3855315, at *7–8 (E.D.N.Y. July 23, 2021) (explaining that the first approach to statutory damages in Section 605 cases is "to award a flat sum, based on plaintiff's submitted evidence as to the amount of the license fee that the particular establishment, given its size, would have had to pay to secure the rights to the broadcast in question"), report and recommendation adopted, 2021 WL 3855311 (E.D.N.Y. Aug. 27, 2021); Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02 CV 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) (awarding the statutory minimum in damages where plaintiff failed to establish any actual damages because plaintiff did not submit evidence of the cost of the license fee for defendants to broadcast the boxing event); Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y.

Mar. 20, 1991) (awarding a flat damage amount "based on the Court's view of the equities and not the estimate of the number of patrons").

Other courts have assessed damages based on the number of patrons in the commercial establishment during the broadcast.  See, e.g., Garden City Boxing Club, Inc. v. Rosado, 2005 WL 3018704, at *3–4 (calculating the award based on the number of patrons present at the unauthorized broadcast multiplied by the residential charge for the pay-per-view event being shown, $54.95); Top Rank Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *4–5 (E.D.N.Y. Mar. 28, 2003) (awarding $50 per patron), adopting report and recommendation, 2003 WL 21143072, at *1–6.  Still other courts in this district have calculated damages by multiplying the residential rate by the number of patrons present, and then adding that amount to the licensing fee.  See, e.g., J & J Sports Prods., Inc. v. Afrikan Poetry Theatre, Inc., No. 17 CV 2196, 2018 WL 2078482, at *8–9 (E.D.N.Y. Feb. 27, 2018), report and recommendation adopted, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018); see also J & J Sports Prods., Inc. v. LDG Williams, LLC, No. 11 CV 2145, 2011 WL 5402031, at *4 (E.D.N.Y. Nov. 7, 2011).

In this case, plaintiff explains that in addition to losing the revenue it would have received from selling the sublicense to defendant, plaintiff has lost and will lose legitimate commercial establishments which are unable to compete financially and lose patrons to establishments like defendant's that steal the programming.  (Pl.'s Mem. at 6).  Plaintiff also claims that its reputation and goodwill then suffers as a result.  (Id. at 7).  Plaintiff contends that it should be compensated for any profits defendant obtained from the increase in proceeds from food and drinks sold to patrons attending the illegal broadcast of the Event.  (Id. at 6).

The Court concludes that a per-patron damages award is appropriate here.  The auditor retained by plaintiff, Leoncite Celestin, visited Eddie Jr.'s on the night of the Event and observed

it being broadcast to patrons on three televisions in the establishment.  (See Celestin Aff.).
Based on his observations, the auditor estimates that Eddie Jr.'s had an approximate capacity of
250 and there were approximately 104 people watching the Event.  (Id.)  Plaintiff seeks statutory
damages in the amount of $7,798.96, which represents the residential licensing fee of $74.99[12]
multiplied by 104, the number of patrons present in Eddie Jr.'s during the broadcast of the Event.
(Pl.'s Mem. at 7–8).  Given the number of patrons in Eddie Jr.'s at the time of the Event, the
amount requested is reasonable and falls within the statutory minimum and maximum of $1,000
and $10,000, respectively.  See 47 U.S.C. § 605(e)(3)(C)(i)(II); Kingvision Pay-Per-View Ltd. v.
Autar, 426 F. Supp. 2d 59, 63–64 (E.D.N.Y. 2006) (awarding $1,000 where multiplying the
number of patrons by $50 would lead to a total less than the statutory minimum).

Accordingly, it is respectfully recommended that plaintiff be awarded $7,798.96 in
statutory damages.

B.     Enhanced Damages

Plaintiff also seeks enhanced statutory damages in the amount of $15,597.92, pursuant to
Section 605(e)(3)(C)(ii).  (Pl.'s Mem. at 10).  The statute provides for additional awards of, up to
a maximum of $100,000, where "the violation was committed willfully and for purposes of
commercial advantage or private financial gain."  J & J Sports Prods., Inc. v. Mangos Steakhouse
& Bakery, 2014 WL 2879868, at *7 (citing Entertainment by J & J, Inc. v. Ramsarran, No. 01
CV 5223, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002)); see also Joe Hand Promotions,
Inc. v. Batista, 2021 WL 3855315, at *8–9 (awarding $20,100 as enhanced damages—triple the
amount of statutory damages of $6,700—where it was not defendants' first time exhibiting a

---

[12] See Mark Lelinwalla, Deontay Wilder vs. Luis Ortiz 2 fighttime, PPV price, boxing odds, undercard &
how to watch, The Sporting News, Nov. 23, 2019, https://www.sportingnews.com/us/boxing/deontay-wilder-vs-luis-
ortiz-2-time-ppv-price-odds-undercard-how-to-watch/13u51npsvu9cx1aigo4tyiw2eg.

broadcast without authorization, defendants advertised the event, and they collected a cover charge in the amount of $25); <u>Time Warner Cable of N.Y.C. v. Taco Rapido Rest.</u>, 988 F. Supp. at 111–12 (awarding statutory damages of $3,750, increased by $5,000 for willfulness under section 605(e)(3)(C)(ii)).  This section clearly applies to persons or entities that operate commercial establishments such as bars, taverns, and restaurants that exhibit unauthorized programming to their patrons.  <u>See, e.g.</u>, <u>Entertainment by J & J, Inc. v. Ramsarran</u>, 2002 WL 720480, at *2.

In determining whether an enhanced award for willful conduct is warranted, some precedents suggest that the simple fact the Event was intercepted and broadcast without permission is a sufficient indication of willfulness.  <u>See, e.g.</u>, <u>J & J Sports Prods., Inc. v. Nest Rest. & Bar, Inc.</u>, No. 17 CV 2194, 2018 WL 4921657, at *8 (E.D.N.Y. July 17, 2018), <u>report and recommendation adopted</u>, 2018 WL 4356724 (E.D.N.Y. Sept. 12, 2018); <u>J & J Sports Prods., Inc. v. Big Daddy's Theme Palace</u>, No. 14 CV 2765, 2015 WL 58606, at *4 (E.D.N.Y. Jan. 5, 2015), <u>adopting report and recommendation</u>, 2015 WL 58606, at *1–6.  "Willfulness means disregard for the governing statute and an indifference to its requirements."  <u>J & J Sports Prods., Inc. v. Big Daddy's Theme Palace</u>, 2015 WL 58606, at *4 (quoting <u>TransWorld Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 127 (1985)).  Courts also consider five factors to determine whether willful conduct warrants an award of enhanced damages: "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks."  <u>J & J Sports Prods., Inc. v. LX Food Grocery Inc.</u>, 2016 WL 6905946, at *5 (quoting <u>J & J Sports Prods. Inc. v. Big</u>

Daddy's Theme Place, Inc., 2015 WL 58606, at *5); see also J & J Sports Prods., Inc. v. Nest Rest. & Bar, Inc., 2018 WL 4921657, at *9 (collecting cases).

Once a court has determined that enhanced damages are warranted, the court must determine the appropriate amount of those damages. Courts take varying approaches in doing so. Some have awarded treble damages for willful violations. See, e.g., Joe Hand Promotions, Inc. v. Batista, 2021 WL 3855315, at *8–9; J & J Sports Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL 3522809, at *3 (E.D.N.Y. Apr. 27, 2010) (recommending plaintiff be awarded an enhancement of three times the statutory damages award of $2,747.50, or $8,242.50, for willfulness, for a total award of $10,990), report and recommendation adopted, 2010 WL 3523003 (E.D.N.Y. Sept. 2, 2010); J & J Sports Prods., Inc. v. Benson, 2007 WL 951872, at *5 (awarding statutory damages of $1,200, plus enhanced damages of $3,600, for a total of $4,800 where plaintiff did not advertise the event, charged no cover, and five patrons were present); J & J Sports Prods., Inc. v. Forbes, No. 07 CV 4394, 2008 WL 5263732, at *5–6 (E.D.N.Y. Dec. 17, 2008) (awarding $1,000 in statutory damages and $3,000 in enhanced statutory damages for willfulness, for a total of $4,000 where there was no evidence of a cover charge or repeated offenses), adopting report and recommendation, 2008 WL 5263732, at *1–7.

Other courts have awarded enhanced damages in an amount double the award of statutory damages, i.e., awarding plaintiff statutory damages plus two times that amount. See, e.g., J & J Sports Prods., Inc. v. Onyx Dreams, Inc., No. 12 CV 5355, 2013 WL 6192546, at *6–7 (E.D.N.Y. Nov. 26, 2013) (awarding enhanced damages of $9,011.80, or two times the statutory damages of $4,505.90, for a total of $13,517.70, where defendant charged a cover fee of $20 and 82 patrons were in attendance), adopting report and recommendation, 2013 WL 6192546, at *1–8; Joe Hand Promotions, Inc. v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *8 (E.D.N.Y.

May 29, 2013) (awarding $1,538.60 in statutory damages plus two times that, $3,077.20, in enhanced damages, for a total award of $4,615.80); Garden City Boxing Club, Inc. v. 135 Hunt Station Billiard, Inc., No. 01 CV 3849, 2012 WL 4328355, at *5 (E.D.N.Y. June 21, 2012) (awarding $4,396 in enhanced damages, plus statutory damages of $2,198, where the violations were willful, there were 40 patrons in attendance, but there was no evidence of prior violations); J & J Sports Prods., Inc. v. Tellez, 2011 WL 6371521, at *6 (awarding $4,670.75 in statutory damages plus two times that amount, or $9,341.50, representing enhanced damages where plaintiff showed no evidence of prior violations and where the revenues defendant earned were unclear and defendants did not collect a cover charge).

Still other courts have simply awarded enhanced damages in an amount equal to the amount awarded for statutory damages, resulting in a total damages award of twice the statutory damages amount.  See, e.g., J & J Sports Prods. Inc. v. Orellana, No. 18 CV 2052, 2019 WL 1177719, at *5–6 (S.D.N.Y. Mar. 13, 2019) (awarding statutory damages of $3,000 and enhanced damages of $3,000); J & J Sports Prods. Inc. v. Johnny's Rest., Bar & Lounge Inc., No. 15 CV 6645, 2016 WL 8254906, at *5–6 (E.D.N.Y. Dec. 15, 2016) (recommending an award of statutory damages of $3,297 and enhanced damages of $3,297), report and recommendation adopted, 2017 WL 591143 (E.D.N.Y. Feb. 13, 2017); J & J Sports Prods., Inc. v. LDG Williams, LLC, 2011 WL 5402031, at *4–5 (awarding statutory damages of $2,534.15 and enhanced damages of $2,534.15 for willfulness).

Finally, there are instances where courts have not awarded an enhancement at all.  See, e.g., J & J Sports Prods., Inc. v. Monte Limar Sports Bar, No. 15 CV 3771, 2017 WL 933079, at *4–5 (E.D.N.Y Mar. 8, 2017) (awarding $2,200 in statutory damages and zero in enhanced damaged because, although there were 100 patrons present, the court found no evidence of

significant profit or commercial advantage); J & J Sports Prods., Inc. v. LX Food Grocery Inc., 2016 WL 6905946, at *4–5 (awarding $2,200 in statutory damages and zero in enhanced damages and explaining that "discretionary enhanced damages should be reserved for particularly severe cases"); J & J Sports Prods., Inc. v. Martinez, No. 07 CV 3455, 2009 WL 1913239, at *2–3 (E.D.N.Y. June 30, 2009) (awarding $3,000 in statutory damages and zero enhanced damages for an establishment with 40 patrons where plaintiff failed to submit evidence or make specific allegations responsive to the aforementioned enhanced damages factors)), adopting report and recommendation, 2009 WL 1913239, at *1–3.

Plaintiff alleges that defendants intercepted and broadcast the Event without entering into a licensing agreement with plaintiff or paying fees to plaintiff.  (Hand Decl. ¶¶ 11, 13).  According to plaintiff, the satellite transmission of the Event was electronically coded or scrambled so that commercial establishments which had not purchased the programming would only be able to receive the programming through "an affirmative, deliberative and willful act, through untoward methods."  (Pl.'s Mem. at 3).  Plaintiff's evidence supports a finding that defendants' conduct was willful, as highlighted by the infringement itself and by the fact that the Event was broadcast on 3 different screens.  See G & G Closed Circuit Events, LLC v. Garcia, No.  CV  , 2021 WL 2810039, at *2 (E.D.N.Y. July 6, 2021) (noting that "[t]hese thefts of signal are virtually always willful"); Joe Hand Promotions, Inc. v. Benitez, No.  CV  , 2020 WL 5519200, at *6 (E.D.N.Y. Aug. 27, 2020) (holding that "[w]illfulness can be established merely by the broadcast of an event without authorization"), report and recommendation adopted, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).  Plaintiff's evidence also supports a finding that the Program was exhibited for commercial gain, as demonstrated by the sale of food and beverages

that night.  Thus, the Court respectfully recommends an award of enhanced damages to compensate for the willfulness of this violation.[13]

In seeking twice the amount awarded as statutory damages, plaintiff cites a variety of factors, including the loss of the sublicense fee and the increased profit that defendant received over all of its competitors who legally purchased a sublicense for the Event.  (Pl.'s Mem. at 9–10).[14]  Plaintiff has not alleged that defendant has repeatedly violated the statute, nor is there any evidence that a cover charge was collected.  However, having considered the number of patrons in Eddie Jr.'s on the night of the Event, plaintiff's loss of the sublicensing fee and loss of good will, and consistent with the precedents in this Circuit, the Court respectfully recommends that plaintiff receive an enhanced award of double the statutory damages, or $15,597.92, for a total award of $23,396.88.

## ATTORNEY'S FEES AND COSTS

I.  Legal Standard

Pursuant to Section 605(e)(3)(B)(iii), plaintiff is also entitled to costs and reasonable attorney's fees.  47 U.S.C. § 605(e)(3)(B)(iii) (stating that the court "shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails"); see also Int'l Cablevision v. Sykes, 997 F.2d at 1009.  "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours

---

[13] One court in this district has noted that it is conceivable that a small business owner could accidentally sign up for residential cable service or that an error on the part of a cable service provider could lead to a business being improperly categorized as a residence, thereby questioning whether a defendant only willingly violates Section 605.  See J & J Sports Prods., Inc. v. Louisias, No. 06 CV 339, 2006 WL 1662608, at *4 (E.D.N.Y. May 16, 2006) (not reaching the question of willfulness because plaintiff failed to establish that the violation of Section 605 was made "for *commercial advantage*"), report and recommendation adopted, (E.D.N.Y. June 14, 2006).  In this case, given that the capacity was approximately 250, the Court finds that this is not a "small business," plus the large number of patrons in the establishment at the time of the Event purchasing food and drinks while watching the Event establishes that the violation was done for commercial advantage.

[14] In this case, the sublicense fee would have been $3,950 for an establishment of the size of Eddie Jr.'s with between 201 and 300 people.  (See Hand Decl. ¶ 7; Rate Card).

spent and rates charged." Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015) (quoting N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir.1983)).  In this Circuit, the fee request must be "accompanied by contemporaneous time records that show for each attorney the date the work was done, 'the hours expended, and the nature of the work done.'"  Id. (quoting Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc., No. 07 CV 2568, 2012 WL 1414872, at *10 (E.D.N.Y. Jan. 20, 2012)).

Courts in this Circuit have traditionally assessed fee requests by applying the lodestar method.  See Jemine v. Dennis, 901 F. Supp. 2d 365, 391–92 (E.D.N.Y. 2012) (collecting cases). In conducting a lodestar assessment, "courts must multiply a reasonable number of hours for the case" with a reasonable hourly rate for the attorney(s) requesting the fee.  Allen v. County of Nassau, No. 22 CV 1572, 2023 WL 4086457, at *5 (E.D.N.Y. June 20, 2023); see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546, 551–52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  What constitutes a "reasonable number of hours" and a "reasonable hourly rate" varies from case-to-case and attorney-to-attorney, and courts will often examine both the experience and expertise of the attorney as well as the complexity of the case. See Allen v. County of Nassau, 2023 WL 4086457, at *5 (collecting cases); Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 27–29 (S.D.N.Y. 2015) (noting that in FLSA actions, rates between $150 and $450 per hour may be appropriate depending on the experience of the attorney.  The Second Circuit has, however, provided some guidance on what factors courts should consider in assessing what constitutes a "presumptively reasonable rate," including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly

> rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the
> amount involved in the case and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar
> cases.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County

Bd. of Elections, 522 F.3d 182, 187 n.3 (2d Cir. 2008) (citing Johnson v. Ga. Highway Express,

Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), abrogated on other grounds by Blanchard v.

Bergeron, 489 U.S. 87 (1989)).

There is a strong presumption that the requested fee is reasonable if it equals or is less

than the lodestar fee.  See Millea v. Metro-North R.R. Co., 658 F.3d at 166 (noting that both the

Second Circuit and Supreme Court "have held that the lodestar . . . creates a 'presumptively

reasonable fee'" (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of

Albany, 522 F.3d at 183)).  Courts in this Circuit have, however, applied a multiplier to the

lodestar calculation to permit fees greater than the lodestar amount, within reason.  See, e.g.,

Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (holding that "a

multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with

contingent fees in FLSA cases"); Velandia v. Serendipity 3, Inc., No. 16 CV 1799, 2018 WL

3418776, at *5 (S.D.N.Y. July 12, 2018) (finding a multiplier of 1.2 to be a "reasonable lodestar

modifier"); Wang v. Masago Neo Asian Inc., No. 14 CV 6249, 2016 WL 7177514, at *4 n.1

(E.D.N.Y. Sept. 26, 2016) (collecting cases); but see Larrea v. FPC Coffees Realty Co., No. 15

CV 1515, 2017 WL 1857246, at *6 (S.D.N.Y. May 5, 2017) (disallowing a fee award resulting

in an 11.4 multiplier).

With respect to costs, the core question is whether plaintiff's counsel seeks reasonable

"costs that are tied to identifiable, out-of-pocket disbursements."  Jemine v. Dennis, 901 F. Supp.

2d at 394 (quoting <u>Moon v. Kwon</u>, No. 99 CV 11810, 2002 WL 31512816, at *30–31 (S.D.N.Y. Nov. 8, 2002)); <u>see also</u> <u>Fisher v. SD Prot. Inc.</u>, 948 F.3d 593, 600 (2d Cir. 2020) (stating that courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients").

## II.  <u>Analysis</u>

Plaintiff seeks a total of $1,880 in attorney's fees and $557 in costs.  (Pl.'s Mem. at 13–14; Jekielek Decl.[15] ¶¶ 18–19).  In support of its request, plaintiff has submitted the Declaration of its counsel, Jon D. Jekielek, Esq. ("Mr. Jekielek" or "Counsel"), setting forth information about his background, the hourly rate billed by the firm for his time, the legal services rendered, the amount of time spent on each service, and the costs incurred by the Firm in representing plaintiff.  (<u>See</u> Jekielek Aff. ¶¶ 2-3, 16–19).  Plaintiff also filed contemporaneous records specifying relevant dates, time spent, and work done in accordance with the requirements of <u>Carey</u>, 711 F.2d at 1147–48.  (<u>See</u> Jekielek Decl. ¶ 17; <u>id.</u> Ex. E (ECF No. 9-11))

Counsel states that he is the co-founder and co-owner of Jekielek & Janis (the "Firm"), and was admitted to practice in 2007.  (Jekielek Aff. ¶ 2).  According to Counsel, the Firm has litigated federal piracy claims on behalf of commercial pay-for-view distributors for 13 years and he has been awarded an hourly rate of $400 per hour by courts in the Eastern and Southern Districts of New York.  (<u>Id.</u> ¶ 16 (citing <u>Joe Hand Promotions, Inc. v. Lizardo</u>, No. 1:20-cv-06593-MKV (S.D.N.Y.), ECF No. 25)).  In support of his request for fees, plaintiff has submitted contemporaneous records specifying relevant dates, time spent and work done in accordance with the requirements of <u>Carey</u>, 711 F.2d at 1147–48.  (<u>See</u> Jekielek Decl. ¶ 17, Ex. E).

---

[15] Citations to "Jekielek Decl." refer to the Declaration of Jon D. Jekielek in Support of Plaintiff's Motion for Default Judgment and Attorney's Fees, dated Apr. 24, 2023 (ECF No. 9-6).

Having considered Counsel's declaration and contemporaneous records, the Court finds that the 4.7 hours of time spent on this relatively simple matter is reasonable.  However, the Court concludes that $400 per hour is not a reasonable rate in this case based on the relevant factors.  Of particular note, this is not a difficult case by any measure, nor does it present any novel legal theories or require a considerable amount of time or effort to litigate.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d at 187 n.3; Joe Hand Promotions, Inc. v. Khan, No. 17 CV 03744, 2018 WL 3973008, at *4 (E.D.N.Y. Aug. 20, 2018) (reducing Mr. Jekielek's fee request, which was based on an hourly rate of $400 per hour, "[g]iven the minimal amount of time and labor required, the lack of complexity and repetitive 'boilerplate' nature of litigating a default judgment in a Cable Act case (which Mr. Jekielek and his firm have done in numerous similar Cable Act cases)").

Instead, the Court concludes that a reasonable hourly rate in this case and for an attorney of Mr. Jekielek's experience is $350 per hour.  See, e.g., Joe Hand Promotions, Inc. v. Benitez, No. 18 CV 06476, 2020 WL 5519200, at *7 (E.D.N.Y. Aug. 27, 2020) (noting that "[c]ourts in this District have found $300 to be a reasonable hourly rate for Jekielek"), report and recommendation adopted, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).  Applying an hourly rate of $350 per hour results in a lodestar of $1,645.00.  The Court finds no basis for departing from that figure to award Counsel's requested fees of $1,880.00.  See Millea v. Metro-North R.R. Co., 658 F.3d at 166 (noting the strong presumption that the lodestar fee is reasonable).  Accordingly, the Court respectfully recommends that the plaintiff be awarded a total of $1,645.00 in fees.

As for costs, plaintiff requests an award of $557 in costs, representing $402 in filing fees, and $155 in service fees.  (Jekielek Decl. ¶ 19).  The Court respectfully recommends that these amounts be awarded to plaintiff as well.

CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the district court grant plaintiff's Motion and award plaintiff $7,798.96 in statutory damages,  $15,597.92 in enhanced damages, $1,645.00 in fees, and $557 in litigation costs, for a total award of $25,598.88, together with post-judgment interest pursuant to 28 U.S.C. § 1961.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is directed to serve a copy of this Report and Recommendation on Garcia and file proof of service on the docket immediately thereafter.

**SO ORDERED.**

Dated: Brooklyn, New York
       March 6, 2024

*Cheryl L. Pollak*
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York